UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLORIDA EB5 INVESTMENTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 19-3573 (RJL) |
| | ) |
| CHAD WOLF, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

March **5th**, 2020 [Dkt. #2]

Plaintiff Florida EB5 Investments, LLC, a Florida-based Regional Center that sponsors capital investment projects using funds from foreign investors who are EB-5 Immigrant Investor Program applicants, seeks a preliminary injunction against defendants, the Acting Secretary of the Department of Homeland Security Chad Wolf, the Acting Director of United States Citizenship & Immigration Services Kenneth T. Cuccinelli, and the Policy Branch Chief of the Immigrant Investor Program Office Edie Pearson. *See* Compl. [Dkt. #1]. Plaintiff seeks to enjoin defendants from implementing certain changes to the U.S. Department of Homeland Security's EB-5 Immigrant Investor Program, including an increase to the minimum investment threshold for foreign nationals to obtain EB-5 visas and a new definition of and method of designating targeted employment areas subject to a reduced investment threshold. *See id.* ¶¶ 58–84; Pl.'s Mot. for Prelim. Inj. [Dkt. #2].

Upon consideration of the parties' briefing and argument, the relevant law, and the entire record, and for the reasons stated below, plaintiff's motion for a preliminary injunction is DENIED.

## BACKGROUND

### I. Regulatory Background

Since 1990, the EB-5 Immigrant Investor Program ("the Program") has offered foreign nationals and their families the opportunity to become permanent U.S. residents when they invest money in American businesses that create at least ten American jobs. *See* 8 U.S.C. § 1153(b)(5). The Immigration and Nationality Act ("INA") prescribed that "the amount of capital required" to obtain such a visa is $1,000,000 and that the Secretary of Homeland Security "may from time to time prescribe regulations increasing the dollar amount specified." *Id.* § 1153(b)(5)(C)(i). The INA also allows a reduced threshold for investments made in targeted employment areas, provided that the reduced threshold is set at "not less than [50%] of" the standard investment threshold. *Id.* § 1153(b)(5)(C)(ii). Under the INA, a targeted employment area subject to the reduced threshold may be either "an area which has experienced high unemployment (of at least 150 percent of the national average rate)" or a "rural area," which is any area that is not "within a metropolitan statistical area or within the outer boundary of any city or town having a population of 20,000 or more." *Id.* § 1153(b)(5)(B)(ii)–(iii).

Until recently, the U.S. Department of Homeland Security ("the Department") maintained the standard investment threshold at $1 million and the reduced investment threshold at $500,000, as originally set by the INA in 1990. *See* 8 C.F.R. § 204.6(f) (2018).

2

In July 2019, however, the Department finalized a rule increasing the standard investment threshold to $1.8 million and the reduced investment threshold to $900,000. *EB-5 Immigrant Investor Program Modernization*, 84 Fed. Reg. 35,750, 35,751–72 (July 24, 2019) ("the Rule"). According to the Department, "[t]his change represents an adjustment for inflation from 1990 to 2015 as measured by the unadjusted Consumer Price Index." *Id.* at 35,752. That was not the only significant change the Department made. The Rule also excluded cities and towns with a population of 20,000 or more within a metropolitan statistical area from being designated as high unemployment areas. *See id.* Finally, the Rule amended regulations allowing states to designate high unemployment areas, *see* 8 C.F.R. § 204.6(i), and instead gave U.S. Citizenship and Immigration Services the authority to designate high unemployment areas. *See* 84 Fed. Reg. at 35,752, 35,809. The Rule went into effect on November 21, 2019.

## II. Plaintiff's Challenge

Five days later, on November 26, 2019, plaintiff Florida EB5 Investments, LLC, brought the instant action, *see* Compl., and filed a Motion for a Temporary Restraining Order and/or a Preliminary Injunction, *see* Mot. for Prelim. Inj. At a status conference on December 6, 2019, plaintiff withdrew its request for a temporary restraining order. *See* 12/6/2019 Min. Entry. After the parties concluded briefing on the preliminary injunction motion on January 3, 2020, I heard oral argument on January 16, 2020. *See* 1/16/2020 Min. Entry.

Plaintiff seeks preliminary injunctive relief to prevent the Department from increasing the investment thresholds, from excluding cities and towns with high

3

unemployment from designation as targeted employment areas, and from precluding states from designating high unemployment areas. Plaintiff argues the Rule is flawed in four key respects. First, plaintiff argues the Rule is arbitrary and capricious because the Department failed to collect and, in some cases, disregarded economic data regarding whether the increased investment thresholds would deter foreign investments. Compl. ¶¶ 58–61; *see also id.* ¶¶ 42–57. Second, plaintiff argues the Department failed to perform a proper Regulatory Flexibility Act analysis of the Rule by not analyzing the impact on small businesses. *Id.* ¶¶ 62–68. Third, plaintiff argues the Rule exceeds the Department's statutory authority by vesting Citizenship and Immigration Services with the authority to designate targeted employment areas and by creating a standard for targeted employment areas that is contrary to the INA's plain language. *Id.* ¶¶ 69–76. Fourth, plaintiff argues the Rule violates the Tenth Amendment by removing states' authority to designate localities as targeted employment areas. *Id.* ¶¶ 77–84. Plaintiff's request for preliminary injunctive relief is premised on the purported harm to its business that it believes will result from a reduction in foreign investment in the capital investment projects it sponsors with funds from applicants to the EB-5 Program.

## **LEGAL STANDARD**

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain preliminary injunctive relief, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in

4

his favor, and [4] that an injunction is in the public interest." *Id.* at 20. Of course, the movant carries the burden of persuasion. *See Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

Although our Circuit has taken no position on the "sliding scale approach," *see, e.g., Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018), "the movant must, at a minimum, 'demonstrate that irreparable injury is *likely* in the absence of an injunction.'" *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 334–35 (D.D.C. 2009) (quoting *Winter*, 555 U.S. at 22). The requirement of showing irreparable harm is an independent requirement: if a plaintiff does not demonstrate that it is likely to suffer irreparable harm in the absence of preliminary relief, the Court may deny the motion without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *see also GEO Specialty Chems., Inc. v. Husisian*, 923 F. Supp. 2d 143, 151 (D.D.C. 2013).

## ANALYSIS

### I. Irreparable Harm

Plaintiff must make a strong showing that it will suffer irreparable harm absent preliminary injunctive relief. Our Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). First, the injury "must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). A preliminary injunction is not appropriate unless "the injury complained of [is] of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable

5

harm." *Id.* (alteration in original). "Injunctions . . . will not issue to prevent injuries neither extant nor presently threatened, but only merely feared." *Comm. in Solidarity with People of El Sal. (CISPES) v. Sessions*, 929 F.2d 742, 745–46 (D.C. Cir. 1991) (alteration in original).

Second, it is "well settled" that economic harm "does not, in and of itself, constitute irreparable harm." *Wis. Gas Co.*, 758 F.2d at 674. "Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Id.*

Plaintiff asserts that the Rule "will have a devastating, irreparable impact on EB5 Investments" by deterring foreign investors from using the EB-5 Program. Pl.'s Mem. in Support of Mot. for Prelim. Inj. ("Pl.'s Mem.") at 2 [Dkt. #2-1]. Plaintiff is a Regional Center that sponsors capital investment projects using funds from EB-5 Program applicants. *See* Compl. ¶ 11. It is undisputed that plaintiff's business model relies entirely on the Program's demand: plaintiff collects 1) annual fees from project developers affiliated with the center and 2) administration fees from individual investors, whom plaintiff provides with a designation letter certifying that their investment qualifies for the EB-5 Program. *See* Mot. for Prelim. Inj., Ex. 2, Decl. of Marty Cummins ("Cummins Decl.") ¶¶ 5, 11 [Dkt. #2-3]; Defs.' Opp. to Mot. for Prelim. Inj. ("Defs.' Opp.") at 4, 36 [Dkt. #15]. Plaintiff cites studies indicating that the pre-Rule EB-5 Program had a positive and strong impact on job creation and business growth to conclude that increasing the investment thresholds would reduce demand for the Program. *See* Mot. for Prelim. Inj., Ex. 3, Decl. of Jeffrey B. Carr ¶¶ 4–5 [Dkt. #2-4]. As evidence of that predicted result,

6

plaintiff claims that while the Rule was pending, plaintiff's affiliates were "uncertain" about interest from potential foreign investors, *see* Cummins Decl. ¶ 9, and after the Rule went into effect, one of plaintiff's affiliates saw a real estate development project lose 23 of its 50 potential investors due at least in part to the increased investment thresholds, *see* Pl.'s Reply in Support of Mot. for Prelim. Inj., Ex. 1, Email from Catherine Henin-Clark ("Henin-Clark Email") at 1 [Dkt. #16-1].

Unfortunately for plaintiff, these speculative economic injuries fail to establish irreparable harm. How so? Plaintiff's claim of irreparable economic harm relies on the Rule eliminating or significantly reducing foreign investment through the EB-5 Program, such that plaintiff's annual fees and administration fees associated with Program demand would significantly decline. Only then would the loss "threaten[] the very existence of the movant's business." *Wis. Gas Co.*, 758 F.2d at 674. This relationship has simply not been shown to be "certain" and "actual," rather than merely "theoretical." *Id.*; *see also GEO Specialty Chems.*, 923 F. Supp. 2d at 148 ("Only where a plaintiff establishes that the economic loss is so severe as to threaten the very survival of its business can economic harm qualify as irreparable."). A preliminary injunction "will not be granted against something merely feared as liable to occur at some indefinite time." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931). Plaintiff has provided one example of a real estate development project in Florida that lost some of its potential investors. *See* Henin-Clark Email at 1. To say the least, one data point does not a trend establish. Put simply, plaintiff has not shown that a significant number of existing investors on many projects will be deterred. *See Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011).

Nor has it negated the Department's position that the increased investment threshold will actually *increase* the overall amount of capital by attracting fewer but larger investments. *See* 84 Fed. Reg. at 35,786 (while "reasonable to assume some number of investors will be unwilling or unable to invest at the increased investment amount," these capital contributions "may very well be more than replaced by other investors investing at the higher minimum investment levels"). The movant bears the burden of "provid[ing] proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674. Plaintiff has done neither.

Plaintiff's reliance on *Art-Metal USA, Inc. v. Solomon*, 473 F. Supp. 1 (D.D.C. 1978), is misplaced. There, the court found irreparable harm where the General Services Administration effectively debarred a company from entering into contracts with the GSA, which had been the primary source of the company's business. *Id.* at 3–4. The Department's Rule, on the other hand, poses no such bar. Plaintiff has failed to show through the email from one affiliate about one project losing investors that the Rule will cause all or significantly all foreign investment through the EB-5 Program to dry up. Plaintiff's estimate that its annual fee income will be reduced "to as little as $100,000" in administration fees, Cummins Decl. ¶ 11, amounts to nothing more than speculation. As plaintiff explained, it has approximately 40 active affiliates and has had annual profits ranging from $400,000 to $1.1 million. *Id.* ¶ 5. Plaintiff acknowledged that its current affiliates "must continue to pay fees while foreign investors await their visa approvals." *Id.* ¶ 11. Indeed, the EB-5 Program was "hugely oversubscribed" at the pre-Rule

investment thresholds, 84 Fed. Reg. at 35,762–63; plaintiff fails to show the increased thresholds will dramatically reduce this overwhelming demand. Mere "uncertain[ty] about the sustainability of the Program," Cummins Decl. ¶ 9, to say the least, is not the type of concrete harm that is required to justify preliminary injunctive relief.

Plaintiff's delay in seeking a preliminary injunction also undercuts its asserted harms. The Department published the final rule in July 2019, *see* Final Rule, *EB-5 Immigrant Investor Program Modernization*, 84 Fed. Reg. 35,750 (July 24, 2009), and made clear the Rule would go into effect on November 21, 2019. *See id.* Still, plaintiff waited until five days after the Rule went into effect in November 2019 to attempt to challenge it. *See* Compl. [Dkt. #1]. This delay directly undercuts plaintiff's argument that its economic harm is so imminent that there is a "clear and present need for equitable relief to prevent irreparable harm," *Fed. Mar. Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192, 202 (D.D.C. 2009). *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (per curiam). Plaintiff's delay in filing suit further weighs against granting preliminary injunctive relief.

## II.  Balance of the Equities and Public Interest

Because plaintiff fails to show irreparable injury would result from denying preliminary injunctive relief, the Court need not reach the other factors. *See GEO Specialty Chems.*, 923 F. Supp. 2d at 147. However, the balance of equities and public interest factors, which merge when plaintiff attempts to preliminarily enjoin a government action, *Nken v. Holder*, 556 U.S. 418, 435 (2009), also weigh against preliminary injunctive relief. Plaintiff alleges preliminary relief will serve the public interest because otherwise, "EB-5

regional centers will suffer under the current Rule through reduced interest from investors and developers." Pl.'s Mem. at 26. Plaintiff's primary motivation, in other words, is its own profits. The Court must "balance the competing claims of injury and the effect an injunction would have on each party." *Fed. Mar. Comm'n*, 607 F. Supp. 2d at 203.

On the other side of the scale, plaintiff downplays the harm that an injunction would inflict on the Government's authority to regulate the admission of foreign nationals seeking employment-based visas. *Compare* Pl.'s Mem. at 26, *with* Defs.' Opp. at 39–40. The Government has a strong interest in the uniform and proper application of its regulations governing the granting of visas to foreign nationals. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1220–21 (D.C. Cir. 1981). The Rule's changes were intended to account for inflation since the creation of the EB-5 program and "ensure that the reduced investment threshold is reserved for areas experiencing sufficiently high levels of unemployment, as Congress intended." 84 Fed. Reg. at 35,752. In the INA, Congress delegated to the Secretary of Homeland Security significant authority to administer and enforce the immigration and nationality laws, including to raise the level of capital investment required in order to account for inflation. *Cf. Arizona v. United States*, 567 U.S. 387, 408–09 (2012). As such, I find that the harm to the Department of Homeland Security's mandate to regulate the admission of foreign nationals that would result if I granted a preliminary injunction outweighs the potential harm to plaintiff's and other regional centers' business in the absence of injunctive relief. Accordingly, the balance of equities and the public interest also weigh against granting plaintiff preliminary injunctive relief.

## CONCLUSION

For the above reasons, the Court DENIES plaintiff's motion for a preliminary injunction. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge